M. D. LEWIS, Respondent, v. INTERNATIONAL BANK ; METCALFE, MOORE & CO., INTERPLEADERS, Appellants.

### January 30, 1883.

1. BANK CHECKS. — As between the drawer and the payee or holder, the delivery of a check is an appropriation of that much of the fund on deposit.

2. —— REVOCATION OF. — The death of the drawer of a check, before its presentation, does not operate as a revocation of the check.

APPEAL from the St. Louis Circuit Court, ADAMS, J. *Reversed and remanded.*

TAYLOR & POLLARD, for the appellants : A check is an absolute appropriation of so much money as is named therein, in the hands of the drawer's banker, to the holder of the check. — *Morrison* v. *McCartney*, 30 Mo. 187 ; *Chouteau* v. *Rowse*, 56 Mo. 67 ; *Roberts* v. *Carlin*, 26 Iowa, 315 ; *Bell* v. *Alexander*, 21 Gratt. 6 ; *German Savings Assn.* v. *Adae*, 1 McCrary, 502 ; *Fogarties* v. *Bank*, 12 Rich. 518 ; *Munn* v. *Birch*, 25 Ill. 35 ; *Fourth National Bank* v. *City National Bank*, 68 Ill. 398 ; *Union National Bank* v. *Ocean County*, 80 Ill. 212 ; *Deener* v. *Brown*, 1 MacArthur, 350 ; *Lester* v. *Given*, 8 Bush, 358. A checkholder may sue the bank holding funds of the drawer upon

its refusal to pay. — *McGrade* v. *German Bank*, 4 Mo. App. 330 ; *Zellé* v. *German Bank*, 4 Mo. App. 401 ; *Senter* v. *Continental Bank*, 7 Mo. App. 532 ; *State Savings* v. *Boatman's*, 12 Mo. App. ——; *Chicago* v. *Stanford*, 28 Ill. 168 ; *Brown* v. *Leckie*, 43 Ill. 500 ; *Roberts* v. *Austin*, 26 Iowa, 316 ; *Weinstock* v. *Bellwood*, 12 Bush, 140. Death of the drawer of a check before it is presented for payment does not revoke it. — *Lawson* v. *Lawson*, 1 P. Wms. 441 ; *Rodick* v. *Landere*, 12 Beav. 325 ; *s. c.* 1 DeG. M. & G. 763 ; *Billing* v. *Devaux*, 3 Man. & G. 571, 573, 574 ; *Rolls* v. *Pierce*, 5 Ch. Div. 730 ; 22 Moaks' E. R. 432 ; Dan. Neg. Inst. (3rd ed.), sects. 24–26 and 1618 b.

WALDO P. JOHNSON and JOHN FLOURNOY. of counsel for the appellants.

F. L. LINTON and JOHN A. LEWIS, for the respondent : Before presentment and demand, the check-holder had no direct claim upon the fund in bank, for there was then no privity, actual or fictitious, between him and the bank. — *Bank of the Republic* v. *Millard*, 10 Wall. 155 ; *Bank* v. *Elliott Bank*, Superior Court of Suffolk County, Mass. (reported in the Am. Law Jour. of Nov., 1857, p. 711) ; *Carr* v. *National Security Bank*, 107 Mass. 47. And the death of the drawer intervening was a revocation of the check. — *Tate* v. *Hilbert*, 2 Ves. Jr. (Sumner's ed.) 117 [*118] ; Story on Prom. Notes (ed. 1868), sect. 498a; see also cases cited in note 1 on p. 694, and note 1 on p. 695 ; Morse on Banks and Banking (ed. 1879), 278. The mere drawing and delivery of the check was by no means a *pro tanto* assignment or appropriation, and before presentment and demand even the drawer might have been justified in removing the entire fund. — *Dykers* v. *Leather Manufacturers' Bank*, 11 Paige Ch. 612 ; *Bank of the Republic* v. *Millard, supra; Christmas* v. *Russell*, 14 Wall. 84. It has been said that the drawing and delivery of a check constitutes a mere revocable agency. — *Lovett* v. *Cornwell*, 6 Wend. 376. Why should the mere drawing

and delivery of the check be held an absolute assignment? It was not a payment of the debt. — *Block* v. *Dorman*, 51 Mo. 32 ; *Morrison* v. *McCartney*, 30 Mo. 183 ; *Kleekamp* v. *Meyer*, 5 Mo. App. 444.

Lewis, P. J., delivered the opinion of the court.

The plaintiff, as administrator of the estate of Michael Viedt, deceased, sues the International Bank for the amount of the decedent's deposit with the defendant, remaining at the time of his death. The bank responds, admitting the deposit, but setting up in effect, that on May 3, 1882, Viedt, then alive, purchased some cattle of Metcalfe, Moore & Co., and gave them in payment a check against the deposit for $885.30 ; that Metcalfe, Moore & Co. had not presented this check when, on May 4, 1882, Viedt committed suicide. A controversy having arisen, the bank prays permission to pay the money into court, and that Metcalfe, Moore & Co. be required to interplead with the plaintiff for an adjudication of their respective claims. The proper orders are made accordingly, and, upon a hearing of the cause, judgment is given for the plaintiff. The only question for determination is, whether the death of Viedt operated a revocation of the check.

This question, like many others, requires for its solution a careful consideration of the parties between whom it arises. As between the bank and the holder of a check drawn upon it, there are many cases wherein the drawing of the check will not be regarded as an absolute appropriation of the fund, which the bank is bound to respect. The bank may fall back upon its relations with the drawer, and refuse to honor the check, because the drawer is its debtor. Before presentation, there is no privity between the bank and the holder, so that the bank may ignore him utterly, and pay out the money upon checks of later date, or upon demand of the depositor. Such is the effect of sundry decisions here cited for the plaintiff. But, as be-

tween the drawer of a check for value, and the payee **or** holder, the case is otherwise.   There is some obscurity, and even disagreement, among the elementary writers on this subject, but the better authority, as sanctioned by Missouri decisions, holds that, as to these parties, the delivery of the check is an appropriation  or assignment of so much of the fund on deposit.    *Morrison* v. *McCartney*, 30 Mo. 183 ; *Chouteau* v. *Rowse*, 56 Mo. 65 ; *McGrade* v. *German Savings Instn.*, 4 Mo. App. 339 ; 4 Kent's Comm. 549 ; Story on Prom. Notes (7th ed.), sect. 3 ; *In re Brown*, 2 Story, 516.   In the last-mentioned case the court said : "Now in the case of a check, I take it to be clear that the drawer implicitly engages that, at the time when the check is due and payable, he has, and will have then and at all times thereafter, sufficient funds in the bank to pay the same upon presentment, and by the draft, he appropriates those funds absolutely for the use of the holder." This general view implies, of course, that the check is given for a valuable consideration.   It naturally results that the drawer cannot voluntarily revoke his check without a violation of the holder's right.   He may effectually stop the payment by a notice to the bank, or a withdrawal of the fund before the presentment of the check.   That, in such case, the bank will not be liable to the holder for its refusal to pay, while the drawer will be legally responsible to the same party on the same account, only illustrates again the change of results, with the change of parties.

In the present controversy, the bank has surrendered all interest and avoided all liability, by the payment of the money into court.   The contest is exclusively between the drawer, through his legal representative, and the payees or holders of the check.   Certain rights, growing out of the drawer's tacit engagement touching the presence of the fund, and his appropriation of it to the use of these holder, were vested in them by the delivery of the check.   It remains to inquire if any reason exists why those rights have

been, or could be, divested out of them by any subsequent act of the drawer, including even his departure from life.

Some authority is here cited for the position, that " the death of the drawer before presentment of the check operates as an absolute revocation of the power of the bank to pay upon his check." Morse on Banks, etc., 278. The judicial basis for this statement is the case of *Tate* v. *Hilbert* (2 Ves. Jr. 111). The comprehensive form of the statement is not at all sanctioned by the decision. The check in that case was a voluntary gift. The drawer died before it was presented for payment. The point made by the decision was, that there was no effectual *donatio mortis causa*. For this there were a number of good reasons, none of which could have the least application to a check given for value received. One was, that words of gift are not sufficient to transfer property without an act. "Therefore, *donatio mortis causa* cannot be by mere parol." The check and its delivery were in parol, only. They expressed no engagement or obligation of any sort, but only the donor's willingness to give. There must have been an actual receipt of the money, in order to a consummation of the gift. No appropriation of the fund could be assumed, when there was no legal undertaking of the drawer, supported by a sufficient consideration that he had, or would have, " sufficient funds in the bank to pay the check upon presentment." All this is foreign to the case of a check given for value in a business transaction. There is, in the present case, no suggestion of *donatio mortis causa*, since it does not appear that anything was done in contemplation of death, or of survivorship in any supposed donee. The question must be settled by the tests of right, or of obligation, as known to commercial law.

If, as the authorities seem to agree, the drawing and delivery of a check, for value, implies an engagement on the part of the drawer, that there shall be funds in the bank to meet it,— in other words, that the bank will pay it when

presented, — why should not such an engagement, as well as any other contract, upon valuable consideration, be binding on his legal representative? No reason, we think, can be shown. If the check creates an absolute appropriation of the funds, such appropriation, unless it be a delusion and a sham, must vest some right in the party for whose benefit the appropriation is made. Was it ever before heard, in our jurisprudence, that a right once vested, whether with or without consideration, could be divested by the death of the party from whom it was acquired? It has been decided in this court and elsewhere, that the holder of a check drawn on a bank, which has, on current deposit from the drawer, a sum sufficient to meet the demand, may sue and recover the amount from the bank. *Union National Bank* v. *O. C. Bank*, 80 Ill. 213; *Senter* v. *Bank*, 7 Mo. App. 532. How can it be possible to sustain such a suit, if it be denied that the drawer's title to the fund has been transferred to the holder of the check? And, if such a transfer has occurred, how is it possible for the death of the transferor to revoke it? If the check is to be treated as a naked power of attorney to the bank, authorizing a payment of the money, — and, in the case of a gift, it might be fair so to consider it, — there may be some ground for saying that the death of the drawer will revoke the power. As to the bank alone, the power to pay, as agent of the depositor, is revocable as well by death as by other means, but the checkholder has a power of attorney to receive the money in the name of the depositor; and this power, being coupled with an interest, is, by a long-settled rule, not revocable by death of the grantor, because of that interest. Thus, all the lines of reasoning, starting, as it were, from different points in the circumference, find a common centre in the single proposition, that the payee in a check, for which he has given value, cannot be deprived of any right by a change in the condition or circumstances of him from whom the right was acquired.

To sum up the argument : The law will recognize no mere gift, without an actual change of possession of the property. But where a consideration has passed, it will enforce the right of property thus contracted for, by compelling a delivery, or its equivalent. Thus, when a check passes from donor to donee, the gift of the check may be complete, because of the change of possession. But this is not a gift of the money which it represents ; for that remains in *statu quo*. On the other hand, a check given for value consummates a contract between drawer and payee, which the law will enforce, like any other, whether against a contracting party, or his legal representatives. We are of opinion, therefore, that so far as the rights of the payees are concerned, the check in this case was not revoked by the death of the drawer before its presentment. The judgment is reversed and the cause remanded. All the judges concur.